UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EKIN MITCHELL,

       Plaintiff,

    v.

SACRAMENTO CITY UNIFIED
SCHOOL DISTRICT,

       Defendant.

_____/

NO. CIV. S-11-362 LKK/DAD

O R D E R

    The plaintiff, a teacher, sued alleging employment discrimination by the Sacramento Unified School District. Plaintiff alleges wrongful termination: (1) in violation of Title VII of the Civil Rights Act of 1964; (2) in violation of her employment contract; (3) in violation of the covenant of good faith and fair dealing; and (4) on the basis of race--specifically, her Middle Eastern ancestry--in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Pl's Compl., ECF No. 1, at 6-8 (Feb. 9, 2011). Plaintiff seeks compensatory damages, tort damages, and punitive damages. Id. at 9. Pending before the court is Defendant's motion to dismiss and to strike, Def's Mot., ECF No. 24

1

1 (Aug. 25, 2011), which Plaintiff opposes, Pl's Opp'n, ECF No. 28

2 (Oct. 4, 2011).

3                    **I. FACTUAL BACKGROUND**[1]

4       Plaintiff Ekin Mitchell is an accredited schoolteacher

5 formerly employed at McClatchy High School by Defendant Sacramento

6 County Unified School District.  Pl's Compl., ECF No. 1, at 1.

7 Plaintiff alleges that, while employed at the school, she

8 consistently performed her duties with diligence, care, and

9 professionalism, and that she had a "stellar record of excellent

10 evaluations," which reflect her dedication to teaching and to her

11 students.  Id.

12      On January 27, 2010, a student, Shianne Griffin, requested

13 permission to use the restroom because she felt nauseated.  Id. at

14 2.  Ms. Mitchell granted the student leave to use the restroom,

15 with the proviso that she return to class within four minutes.  Id.

16 Shianne Griffin returned from the restroom within the allotted

17 time-frame and took her seat in class.  Id.

18      Later that same class period, Shianne Griffin again requested

19 permission to use the restroom.  Id.  Again, Ms. Mitchell granted

20 permission to use the restroom, with the proviso that the student

21 return within four minutes.  Id.  Ms. Mitchell sent two students to

22 accompany Shianne Griffin to the restroom.  Id. at 3.  Neither Ms.

23 Griffin nor the other two students returned to the classroom.  Id.

24

25      [1] These facts are taken from the allegations in the
Plaintiffs' Complaint, ECF No. 1, unless otherwise specified.  The
allegations are taken as true for purposes of this motion only.
26 See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).

1  After Ms. Mitchell sent a fourth student to inquire after the

2  whereabouts of Shianne Griffin, the student returned and reported

3  that Ms. Griffin and the two students that had accompanied her had

4  gone into an alcove at the back of Ms. Joyce Stevens's classroom.[2]

5  Id.  Shianne Griffin remained in the alcove within Ms. Stevens's

6  classroom until school concluded that day at 12:30 p.m. (due to a

7  shortened day schedule).  Id.

8      At the conclusion of the school day, Ms. Mitchell went to Ms.

9  Stevens's classroom to inquire about Ms. Griffin's condition and

10 Ms. Stevens stated that the student had rested comfortably and was

11 discharged to her family member at the conclusion of the day.  Id.

12 Ms. Stevens also conveyed her belief that Ms. Griffin had been

13 intoxicated on alcohol.  Id.  Ms. Stevens stated that the matter

14 did not need to be reported to the school administration because

15 the student was, by then, in the care of her family member, and

16 because Ms. Stevens regarded Ms. Griffin as a "good student" who

17 should not receive discipline for underage drinking.  Id.  Ms.

18 Mitchell followed this suggested disposition because Ms. Stevens

19 had twenty-eight years of seniority over Ms. Mitchell at the

20 school.  Id.  Accordingly, Ms. Mitchell took no further action and

21 considered the matter resolved.  Id.

22     On Friday, January 29, 2010, Ms. Mitchell was interrogated at

23

24     [2] Plaintiff's complaint spells the teacher's name as both
   "Stevens" and "Stephens."  See, e.g., Pl's Compl., ECF No. 1, at
25 3.  Because Plaintiff consistently uses the spelling, "Stevens,"
   in her opposition to Defendant's motion to dismiss, the court uses
26 that spelling for purposes of this order.

1  length by officers from the Sacramento Police Department, after
2  which, she was placed on administrative leave.  Id. at 3-4.

3      On or about February 19, 2010, Ms. Mitchell received a letter
4  from the Sacramento City Unified School District titled, "Notice of
5  Unprofessional Conduct," and setting forth a statement of the
6  incident.  Id. at 4.  Ms. Mitchell was placed on forty-five days'
7  probation and, on March 5, 2010, Ms. Mitchell was terminated.  Id.
8  The termination letter did not specify why she was being
9  terminated, but did refer to Education Code section 44954 as the
10 statutory basis for termination.[3]  Id.

11     Ms. Stevens did not receive a similar "Notice of
12 Unprofessional Conduct", nor from all that appears, was she in any
13 way disciplined for her central role in the incident.  See id. at
14 4-5.  Nor, for that matter, did Ms. Stevens suffer any adverse
15 employment action for her role in failing to report the student's
16 alcohol consumption.  Id. at 6.  Ms. Stevens is Caucasian; Ms.
17 Mitchell is Middle Eastern, and of Turkish ancestry.  Id. at 5, 6.

18     In an October 2008 performance review, signed and dated by the
19 school principal on March 24, 2009, Ms. Mitchell received
20 consistently high marks across the evaluation criteria, and was

21
22     [3] California Education Code Section 44954 provides: "Governing
   boards of school districts may release temporary employees
23 requiring certification qualifications under the following
   circumstances: (a) At the pleasure of the board prior to serving
24 during one school year at least 75 percent of the number of days
   the regular schools of the district are maintained. (b) After
25 serving during one school year the number of days set forth in
   subdivision (a), if the employee is notified before the end of the
26 school year of the district's decision not to reelect the employee
   for the next succeeding year. CAL. EDUC. CODE § 44954 (2011).

1  specifically commended for volunteering and leading the school's
2  extracurricular activities and in implementing the expansion of a
3  program called "World Curious," in which students are encouraged to
4  take an active interest in world affairs.  Id. at 5.

5  ## II. STANDARD FOR MOTION TO DISMISS

6      A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges
7  a complaint's compliance with the federal pleading requirements.
8  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and
9  plain statement of the claim showing that the pleader is entitled
10 to relief."  The complaint must give the defendant "'fair notice of
11 what the ... claim is and the grounds upon which it rests.'"  Bell
12 Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v.
13 Gibson, 355 U.S. 41, 47 (1957).

14     To meet this requirement, the complaint must be supported by
15 factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.
16 Ct. 1937 (2009).  Moreover, this court "must accept as true all of
17 the factual allegations contained in the complaint."  Erickson v.
18 Pardus, 551 U.S. 89, 94 (2007).[4]

19     "While legal conclusions can provide the framework of a
20 complaint," neither legal conclusions nor conclusory statements are
21 themselves sufficient, and such statements are not entitled to a

22

23     [4] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
24 are dismissals based on a judge's disbelief of a complaint's
   factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
25 (1974) ("it may appear on the face of the pleadings that a recovery
   is very remote and unlikely but that is not the test" under
26 Rule 12(b)(6)).

1  presumption of truth.  <u>Iqbal</u>, 556 U.S. at ___, 129 S. Ct. at

2  1949–50.  <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process

3  for evaluation of motions to dismiss.  The court first identifies

4  the non-conclusory factual allegations, and then determines whether

5  these allegations, taken as true and construed in the light most

6  favorable to the plaintiff, "plausibly give rise to an entitlement

7  to relief."  <u>Iqbal</u>, 556 U.S. at ___, 129 S. Ct. at 1949–50.

8      "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

9  refer to the likelihood that a pleader will succeed in proving the

10 allegations.  Instead, it refers to whether the non-conclusory

11 factual allegations, when assumed to be true, "allow[ ] the court

12 to draw the reasonable inference that the defendant is liable for

13 the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at ___, 129 S. Ct. at

14 1949.  "The plausibility standard is not akin to a 'probability

15 requirement,' but it asks for more than a sheer possibility that a

16 defendant has acted unlawfully."  <u>Id.</u> (<u>quoting</u> <u>Twombly</u>, 550 U.S. at

17 557).[5]  A complaint may fail to show a right to relief either by

18

19      [5] <u>Twombly</u> imposed an apparently new "plausibility" gloss on
the previously well-known Rule 8(a) standard, and retired the
long-established "no set of facts" standard of <u>Conley v. Gibson</u>,
20 355 U.S. 41 (1957), although it did not overrule that case
outright.  <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th
21 Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright
overruling <u>Conley</u> ...," although it was retiring the "no set of
22 facts" language from <u>Conley</u>).  The Ninth Circuit has acknowledged
the difficulty of applying the resulting standard, given the
23 "perplexing" mix of standards the Supreme Court has applied in
recent cases.  <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th
24 Cir. 2011) (comparing the Court's application of the "original,
more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>,
25 534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per
curiam), with the seemingly "higher pleading standard" in <u>Dura</u>
26 <u>Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and

1  lacking a cognizable legal theory or by lacking sufficient facts

2  alleged under a cognizable legal theory.  Balistreri v. Pacifica

3  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

4                        **III.  ANALYSIS**

5       In its motion to dismiss and to strike, Defendant argues that:

6  (1) Plaintiff's first cause of action for violation of Title VII

7  should be dismissed because there are insufficient facts alleged to

8  support a claim pursuant to Title VII; (2) Plaintiff's second cause

9  of action for breach of her employment contract should be dismissed

10 on the grounds of Eleventh Amendment immunity, failure to timely

11 file a government tort claim, and because there are insufficient

12 facts alleged to support such a theory of alleged violation; (3)

13 Plaintiff's third cause of action for breach of the covenant of

14 good faith and fair dealing should be dismissed on the grounds of

15 Eleventh Amendment immunity, failure to timely file a government

16 tort claim, and because there are insufficient facts alleged to

17 support such theory of alleged violations; (4) Plaintiff's fourth

18 claim for a violation of 42 U.S.C. § 1981 should be dismissed on

19 the grounds of Eleventh Amendment immunity and because there are

20 insufficient facts alleged to support such theory of alleged

21 violations; and (5) Plaintiff's claims for punitive damages are

22 barred by the Eleventh Amendment and should be stricken.  Def's

23 Mot., ECF No. 24, at 1-2.

24
   ───────────────────
   Iqbal), rehearing *en banc* denied, ___ F.3d ___, 2011 WL 4582500
25 (October 5, 2011).  See also Cook v. Brewer, 637 F.3d 1002, 1004
   (9th Cir. 2011) (applying the "no set of facts" standard to a
26 Section 1983 case).

1    In her opposition to Defendant's motion, Plaintiff "concedes
2  the FRCP Rule 12(b)(6) motion as to the second, third, and fourth
3  causes of action, as well as the claim for punitive damages." Pl's
4  Opp'n, ECF No. 28, at 1.

5    The only remaining issue before the court therefore is
6  Defendant's motion to dismiss Plaintiff's first cause of action;
7  that is, whether or not Ekin Mitchell has pled sufficient facts to
8  support a cause of action under Title VII of the Civil Rights Act
9  of 1964. Defendant's motions to dismiss Plaintiff's second, third,
10 and fourth cause of action will be granted, without leave to amend.
11 Defendant's motion to strike Plaintiff's claims for punitive
12 damages is granted, without leave to amend.

13 **A. TITLE VII CLAIM**

14   In order to establish a prima facie case of racial
15 discrimination under Title VII of the Civil Rights Act, a plaintiff
16 must show that "(1) [s]he is a member of a protected class; (2)
17 [s]he was qualified for [her] position; (3) [s]he experienced
18 adverse employment action; and (4) similarly situated individuals
19 outside [her] protected class were treated more favorably, or other
20 circumstances surrounding the adverse employment action give rise
21 to an inference of discrimination." Peterson v. Hewlett-Packard
22 Co., 358 F.3d 599, 603 (9th Cir. 2004); cf. McDonnell Douglas Corp.
23 v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
24 The Ninth Circuit has held that a plaintiff's burden in
25 establishing a prima facie case is "minimal." Coghlan v. Am.
26 Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005). Once a

8

1  plaintiff establishes a prima facie case, the burden shifts to the
2  defendant to produce a legitimate non-discriminatory reason for the
3  adverse employment action--in this case, termination. <u>McDonnell</u>
4  <u>Douglas Corp.</u>, 411 U.S. at 802; <u>Sisson v. Helms</u>, 751 F.2d 991 (9th
5  Cir. 1985).   The plaintiff then must "be afforded a fair
6  opportunity to show that [defendant's] stated reason for
7  respondent's rejection was in fact pretext." <u>McDonnell Douglas</u>
8  <u>Corp.</u>, 411 U.S. at 803.

9       Because the Defendant does not raise arguments that Plaintiff
10 has failed to allege sufficient facts to support the first three
11 elements of the prima facie case, those elements are not at issue.
12 The parties are, however, in dispute regarding whether or not Ms.
13 Mitchell can establish the fourth element of the prima facie case.

14      Plaintiff provides that she is Middle Eastern and of Turkish
15 ancestry, while Ms. Stevens is Caucasian. Pl's Compl., ECF No. 1,
16 at 6.  This fact is sufficient to establish that Ms. Stevens is an
17 individual outside of Plaintiff's racial group, and therefore,
18 outside of Plaintiff's protected class. <u>Cf.</u> <u>Aragon v. Republic</u>
19 <u>Silver State Disposal, Inc.</u>, 292 F.3d 654, 660 (9th Cir. 2002) ("It
20 is well-established that Title VII applies to any racial group,
21 whether minority or majority.").

22      Plaintiff further provides that she received a "Notice of
23 Unprofessional Conduct" and was eventually terminated, while Ms.
24 Stevens received "no adverse employment action." <u>See</u> Pl's Compl.,
25 at 4-6.  This fact is sufficient to establish that Ms. Stevens was
26 treated more favorably than Ms. Mitchell.

1    The remaining issue is whether or not Ms. Mitchell and Ms.
2  Stevens were "similarly situated" or whether Plaintiff Mitchell has
3  alleged sufficient facts to show that "other circumstances
4  surrounding the adverse employment action give rise to an inference
5  of discrimination."

6    As evidence of disparate treatment, Plaintiff points only to
7  the fact that Ms. Stevens--a Caucasian teacher who assertedly
8  suggested the non-response and who similarly failed to report the
9  student's intoxication--received no adverse employment action,
10  whereas Ms. Mitchell was terminated.  Even if the court were to
11  conclude that the two teachers were not similarly situated, the
12  circumstances suggest other evidence of discrimination.

13    Turning then to the issue of similarly situated, it is not at
14  all clear to the court that there were pertinent distinctions.

15    "Whether two employees are similarly situated is ordinarily a
16  question of fact."  Beck v. United Food & Commercial Workers Union
17  Local 99, 506 F.3d 874, 885 n.5 (9th Cir. 2007).  In general,
18  "individuals are similarly situated when they have similar jobs and
19  display similar conduct."  Vasquez v. County of Los Angeles, 349
20  F.3d 634, 641 (9th Cir. 2003).  The employees' roles need not be
21  identical, but they must be similar "in all material respects."
22  Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) (citing Aragon v.
23  Republic Silver State Disposal, 292 F.3d 654, 660 (9th Cir. 2002)).

24    In the instant case, Plaintiff has alleged that she and Ms.
25  Stevens were both teachers at the same school, and that both of
26  them had been involved in knowingly failing to report a student's

intoxication to the school administration.  <u>See</u> Pl's Compl., at 2-
3.  Thus, it would appear that the two teachers were similarly
situated.

Defendant argues, however, that the fact that Ms. Stevens has
twenty-eight years seniority over Ms. Mitchell at the school,
coupled with Ms. Mitchell's status as a "temporary employee" (as
demonstrated by California Education Code § 44954), is sufficient
to show that the two teachers were not "similarly situated."
Defendant reasons that "this 28-plus year tenure gave Ms. Stevens
permanent status with the District, entitling her to a valid
property interest in her position of a constitutional stature. . .
. she was unable to be terminated from her position without 'good
cause.'"  Def's Mot., ECF No. 24, at 8.  Defendant's argument is
puzzling.  They may be arguing that they did not have good cause--
if so, they hardly have defeated plaintiff's prima facie showing.

More probably, they are saying they did not have good cause
sufficient to fire a tenured teacher.  It appears to the court,
however, that a legitimate, nondiscriminatory reason to impose the
ultimate sanction of discharge against Ms. Mitchell must be
sufficient to give rise to some sanction against Ms. Stevens.  The
court thus disagrees that this difference between the two teachers
is enough to defeat the plausibility of Plaintiff's Title VII prima
facie case.

In Title VII cases, a number of courts outside the Ninth
Circuit have determined that the distinction between temporary and
permanent employees has been significant enough to defeat

1  plaintiffs' arguments that people in each of the two groups were
2  "similarly situated."  See, e.g., Jones v. Yonkers Pub. Schs., 326
3  F. Supp. 2d 536, 545 (S.D.N.Y. 2004) ("[A] probationary civil
4  service  employee  generally  is  not  situated  similarly  to  a
5  non-probationary employee as a matter of law."); Steinhauer v.
6  DeGolier, 359 F.3d 481, 484-85 (7th Cir. 2004) ("Purifoy and
7  Steinhauer were not similarly situated because Steinhauer was still
8  on probation while Purifoy was not."); Bogren v. Minnesota, 236
9  F.3d 399, 405 (8th Cir. 2000) ("We agree with the premise
10 underlying the district court's conclusion; troopers beyond the
11 probationary period are not similarly situated to a probationary
12 trooper.  Consequently, assuming nonprobationary troopers were
13 treated more favorably than [plaintiff], we do not find that fact
14 probative of whether the state's explanation is pretextual.")
15 (citations omitted), cert. denied, 534 U.S. 816, 122 S.Ct. 44
16 (2001); McKenna v. Weinberger, 729 F.2d 783, 789-90 (D.C. Cir.
17 1984) (holding that a probationary employee was not similarly
18 situated  to  a  permanent  employee  and  noting  that  "agency
19 regulations  mandated  that  probationary  employees  with  serious
20 performance problems were to be terminated, even if those problems
21 would  not  have  been  good  cause  for  terminating  a  permanent
22 employee.").

23     It is axiomatic, however, that what was a material factual
24 distinction  in  one  Title  VII  case  will  not  necessarily  be  a
25 material  factual  distinction  in  another.   Prior  cases  in  which
26 courts found that probationary versus permanent employees were not

1   similarly situated do not, by virtue of their specific factual
2   determinations, create a rigid requirement that every Title VII
3   plaintiff prove that employees were congruent in their probationary
4   or permanent statuses in order to establish that they were
5   similarly situated.  Indeed, the Ninth Circuit has provided that
6   the question of whether or not employees are similarly situated is
7   a fact-intensive inquiry, and the materiality of any differences
8   between employees' roles will vary depending on the context and the
9   facts of each case.  Hawn v. Executive Jet Management, Inc., 615
10  F.3d 1151, 1157 (9th Cir. 2010).

11          In determining the materiality of any differences between Ms.
12  Mitchell and Ms. Stevens, it is important to remember that the
13  ultimate issue presented by Plaintiff's complaint is not whether it
14  was easy or hard for the school district to terminate Ms. Mitchell
15  as compared with Ms. Stevens but, instead, whether the school
16  district was, in fact, motivated by a discriminatory animus in its
17  termination of Ms. Mitchell.  Ms. Mitchell's status as a temporary
18  employee did not give the school district an open license to
19  terminate her employment for reasons violative of federal law.  Put
20  another way, a given category of workers might be easy to fire, but
21  that does not make all firings of workers within that category
22  necessarily non-discriminatory.  Cf. Dawson v. Entek Intern, 630
23  F.3d 928, 936 (9th Cir. 2011) (determining that a district court
24  erred in resolving by summary judgment an employee's Title VII
25  retaliation claim and providing that "there is no legal precedent
26  to support Entek's suggestion that a probationary or temporary

1   employee is subject to a different or lower standard for purposes
2   of proving discriminatory treatment than a permanent employee.").
3   The fact that it was easier for the school district to fire Ms.
4   Mitchell than it would have been for them to fire Ms. Stevens does
5   not prove or disprove Plaintiff's allegations that she was fired
6   due to a racially discriminatory animus on the part of the
7   district, and therefore, that fact does not diminish the
8   sufficiency of Ms. Mitchell's complaint.

9       To resolve the "elusive factual question of intentional
10  discrimination," the court is bound to adhere to the
11  burden-shifting analysis established in McDonnell Douglas.   See
12  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 n.8
13  (1981).

14      Based on the evidence at hand, the court presumes that, after
15  the pleading stage of this case, the Defendant's proffered
16  rationale for its termination of Ms. Mitchell would be that, as a
17  temporary employee, Ms. Mitchell could be fired "[a]t the pleasure"
18  of the governing board of the school district, see CAL. EDUC. §
19  44954(a), and Ms. Mitchell's failure to report a student's
20  intoxication was a legitimate, non-discriminatory reason for Ms.
21  Mitchell's termination.   But if this court were to use the
22  employer's rationale as the basis for defining who was similarly
23  situated, the court's reasoning will have unfairly short-circuited
24  the burden-shifting analysis established in McDonnell Douglas at
25  the prima facie stage, and will have frustrated the plaintiff's
26  opportunity to prove that the employer's proffered rationale was

14

1  pretextual.  Cf. McDonnell Douglas Corp., 411 U.S. at 802; see also

2  EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th

3  Cir. 2000) ("a defendant cannot defeat a plaintiff's prima facie

4  case by articulating the reasons for the adverse employment action

5  because the plaintiff in such a situation would be denied the

6  opportunity to show that the reasons advanced by the defendant were

7  pretextual") (internal citation omitted).

8      For these reasons, the court determines that the allegations

9  that Ms. Mitchell and Ms. Stevens were both teachers at McClatchy

10  High School, and that they were both involved in the incident

11  precipitating Ms. Mitchell's dismissal, is sufficient to plausibly

12  establish that Ms. Mitchell and Ms. Stevens had "similar jobs and

13  display[ed] similar conduct." Vasquez, 349 F.3d at 641.  Thus,

14  Plaintiff's complaint contains factual allegations to plausibly

15  establish that a similarly situated individual outside of Ms.

16  Mitchell's protected racial class was treated more favorably than

17  her.  Plaintiff has therefore pled sufficient facts to support a

18  cause of action under Title VII of the Civil Rights Act of 1964,

19  and Defendant's motion to dismiss Plaintiff's first cause of action

20  is DENIED.

21                      **IV. CONCLUSION**

22      For the foregoing reasons, the court DENIES Defendant's motion

23  to dismiss Plaintiff's first cause of action for violation of Title

24  VII.

25      The court GRANTS Defendants' motions to dismiss Plaintiff's

26  second, third, and fourth cause of action, WITHOUT LEAVE TO AMEND.

                                15

1  The court GRANTS Defendant's motion to strike Plaintiff's claims

2  for punitive damages, WITHOUT LEAVE TO AMEND.

3       IT IS SO ORDERED.

4       DATED:  November 2, 2011.

5

6

7                                   _____
                                    LAWRENCE K. KARLTON

8                                   SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26